United States v. Bolanos Good morning, Your Honors. May it please the Court, George Harris on behalf of the Defendant Appellant Isaack Paopao. There are two issues on appeal. Did the District Court err, first of all, by invoking an extreme upward variance at sentencing to avoid disparity with a defendant who had much higher guidelines offense level? And second, did the District Court err by denying the motion to dismiss based on double jeopardy? I'd like to address the sentencing issue first, if I may. The District Court sentenced Mr. Paopao to 36 months, despite a guidelines range of 10 to 16 months. The sole rationale for that upward variance was to avoid disparity with a co-defendant who was sentenced to 36 months. That was an abuse of discretion here because the co-defendant was not found guilty of similar conduct as defined by the guidelines. First of all, his offense level, the co-defendant's offense level was 29, 17 levels higher than Mr. Paopao's level 12. He had a sentencing range of 87 to 108 months, as opposed to Mr. Paopao's 10 to 16 months. And the 3553A6 avoidance of disparity factors simply wasn't intended to address disparities that result from application of the guidelines, which define similar conduct. And I think the Supreme Court made this clear in the Gall case. It said avoidance of unwarranted disparities was clearly considered by the sentencing commission. Indeed, in that case, the Supreme Court held that the different sentence that the co-defendant received, despite the fact their participation in the crime was roughly comparable, didn't create a disparity because the co-defendant had a higher guideline sentence. So you've been arguing that the only reason for this sentence was to match the co-conspirator's sentence. But the judge actually said at ER 20 that this sentence was necessary to make the sentence proportional and reasonable. Why isn't that an indication that really what's going on here is the district court wanted to have a sentence that matched pretty extensive involvement in a pretty big drug conspiracy with all these flights carrying drugs back and forth to Hawaii? I mean, maybe the judge just thought this is what was necessary to be a reasonable sentence for the conduct. Well, I mean, the judge did not specifically refer to any other factors. Indeed, the only other facts in the record that he noted were all favorable to Mr. Pau-Pau. He said, I have a defendant with basically no record in front of me, strong families of sport, seven children out there. I think fairly read, the disparity, I mean, certainly drove the decision here by the district court. And I think that was an abuse of discretion. And we have not here not only a different guidelines calculation, but we have defendant was actually convicted under a different statutory provision. Because here, Mr. Pau-Pau was convicted under 84.1b1c, where there's no requirement of any proof of quantity of the controlled substance. There's no minimum mandatory. On the other hand, the co-defendant pled guilty to 84.1b1c, which does require defined amounts and has a minimum mandatory of 10 years. Yes. But I guess it just strikes me as you're being — you're technically right on everything you've said. But I view the judge as saying, look, I'm trying to be realistic about this. And I sat through, I guess, what, two trials for this gentleman, your client, and then a guilty plea for the other person, and said they basically did the exact same thing in this conspiracy. Yes, for one of them, he was willing to admit a specific quantity of drugs, which triggered the mandatory minimum or whatever it was. But I think this Court, en banc, has rejected that reasoning as a basis for an upward variance, and in this way. And it really takes two steps. But first, in Mohamed, the Court held that, you know, pre-Booker cases are relevant to application of upward variances. Limitations on departures that were recognized by the Court pre-Booker are relevant to the determination of reasonableness post-Booker. If we look at the Bonuelos case, I mean, it's directly on point here. I mean, there you had defendants. It's the same statute. The defendant said, hey, you know, this is disparity with these other defendants, but he was subject to an enhancement. They weren't. The Court said that's not a proper comparison. That's not a basis in which to distinguish. And — I don't think you're responding to what Mike said, though. I'm saying that the district court had before it, he knew exactly what your client did in this conspiracy, right? Yes. Can't pinpoint to the gram the amount of drugs involved. But in terms of the culpability of your client's conduct, it was exactly comparable to the other defendant. That's what the district court was in a position to realize. Okay. And that's what the Enrique Munoz case addressed directly and was favorably cited by Bonuelos. It said what the district court did was to sought to look behind the plea agreement and assess the actual culpability of the defendants. And the court said that's not appropriate, and the Bonuelos en banc decision cited that for a really    en banc decision cited that for a really good reason. And the court quoted it. It said, and referring to Enrique Munoz, the district court based its upward departure on par on the fact that a co-defendant had been sentenced to a 24-month prison term. The government argued it was appropriate for the district court to depart upward to equalize the sentence of the defendant's co-defendant because they had engaged in similar underlying criminal conduct, two defendants in the same case. And Bonuelos says this court disagreed and held that the district court could not impose an upward departure to equalize the defendant's sentence with that of his co-defendants because they had pled guilty to a, had not met the requirements of 841B1A. And, in fact, he's going to say, well, I'm going to treat him as if it did. But how did both of the defendants that were compared to each other in Bonuelos pled guilty? Well, in Bonuelos, it was actually the defendant was attempting to compare himself to people who had been sentenced in another district, but they had been consistently,    had they had the trial. The point is the person whose sentence was at issue had pled guilty in Bonuelos. So it's different than this situation where the judge watched two trials about this guy's conduct. I mean, part of what Bonuelos is saying is that we don't want to impinge on prosecutors' discretion when they're plea bargaining. But that's not a concern that's at issue here where there were trials. Well, here, here, there we're imposing on, you know, the plea bargaining discretion. Here we're imposing on the decision of the jury and the district court judge, you know, fully supported by his own view of the record where he said the witnesses were not credible. We had no evidence of an amount seized. You know, none of this was found. And we have a congressional determination where they're very two different statutory considerations here. So, yes, the other defendant pled guilty and admitted, you know, the enhancement that does not apply to Mr. Pau-Pau here. So then to turn around and use an upward variance under the guidelines, you know, to affect that same result and, in fact, erase the difference between those two very distinct provisions of the statute enacted by Congress, I think, is an abuse of discretion here. And I think Bonuelos and its adoption of Enrique Munoz recognizes, you know, that that's not an appropriate comparison to be made here. So I don't want to eat into your rebuttal time, but if you could, during rebuttal, I'm going to ask you if you could distinguish the Satern case. Okay. S-A-E-T-U-R-N. You should do that now, and we'll give you a couple minutes extra. Okay. So in the Satern case, it was a situation similar to this one, which is where the district judge used 3553A6 language to compare co-defendants, and this court said, yeah, it wasn't really A6, it should have been A1, but we're going to put that A6 argument under A1, and we're going to affirm on that ground. Why is this case not the same? Well, in Satern, they looked at the district court record, and they looked at the including a number of things about the defendant's personal history, his characteristics, his negative factors, including the abuse of a domestic partner. I mean, all of these things the court looked at very specifically, you know, as the totality here. I think here we have the court starting and ending with, hey, this other defendant got a 36-month sentence. You know, I think they did about the same thing. They should get the same sentence, and I think that is not a proper basis for comparison under this court's precedent. So I see my time is up. Whatever I have left, if any, I'll reserve to it. We'll give you a couple minutes for rebuttal. Thank you. Let's hear from the government. Good morning. May it please the Court. I'm Doug Wilson on behalf of the United States. The district court in this ‑‑ the question in this case is whether the sentence imposed by the district court was substantively unreasonable. And in this case, the district court decided that a 36-month sentence was not substantively unreasonable. It ‑‑ I don't think that's the argument that the defendant is making. I think the defendant is making a procedural argument and saying that the procedural error, the considering under A6 something that shouldn't be in A6, infected the bottom line sentence. I disagree, Your Honor. I don't believe the defendant is making any procedural argument at all. I think this is not a case of procedural unreasonableness. It's a case of substantive unreasonableness. And I don't have the ‑‑ I can look at the defendant's brief again, if you would like, but I believe this is a case of substantive unreasonableness and not procedural unreasonableness. And that's the way it's been briefed in this court, I think. So if there's ‑‑ if the claim is procedural unreasonableness, then I don't think there's any error anyway, because the district court simply compared the ‑‑ this defendant to another defendant, which this court has many times said is possible. So let me hear your response to your opponent's argument, which to me seems quite reasonable on its face, which is to say, look, the other guy was willing to admit having trafficked in quantities that triggered, I think, a 10‑year mandatory minimum, right? No. Well, he got safety valve. That's why he got down. He got safety valve, yes. But the quantities is what largely drives the sentence in these drug cases, right? That's correct. You're well familiar with that. So the Sentencing Commission, in its infinite wisdom, has decided that that's the most important thing for assessing a defendant's culpability in the offense, right? So that defendant, in the other case, was willing to admit quantities that triggered a much higher offense level, whereas here, neither the jury nor the district court was willing or able to say that this defendant had trafficked in those quantities. So why doesn't that make them completely different in terms of their relative culpability? Well, first of all, Your Honor, I think there's a difference between willing and able. The district court is not entitled to be unwilling to make a drug determination. The guidelines require it to make a drug determination. In this case, the district court refused to do that, and I believe that was error. Now, the government hasn't appealed that error. No, okay. Yeah, you didn't, and there's nothing to— But— But wait, wait. The judge, I thought—but tell me if I'm wrong—I thought the judge said, I agree with the jury, the evidence is too unreliable as to the quantities, and that's why I can't peg a specific amount. Isn't that what the judge said? The judge did say that, but the judge nevertheless is required, under the guidelines, to make a drug—a quantity determination. That's a determination that I can't make. Obviously, I guess you guys were arguing, hey, please peg it at this level so we can have a much higher offense level, and the judge said, I can't do that on this evidence. So that's a finding that this offense, for which this defendant was found guilty, involved a lesser quantity than the other defendant. No? But the district court found that the defendant had taken at least 15 trips to Hawaii, and so during those trips, the district court must have found that he carried some amount of drugs. So I don't believe it's—I think the district court erred in finding an offense level of 12. Did the government object to that range that the district court set? It did object, yes, Your Honor. It very briefly objected, but it did object. And it objected to the guideline calculation, and I can find that for you if you want. But that's an ER-22. So where in the record did the district judge articulate a basis from the record for saying that what Papao did was comparable to what Malay did? Where did the district court explain during the sentencing, I'm giving them the same sentence because what Papao did is comparable, sufficiently comparable to what Malay did? The district court said that they're both couriers, and therefore they should get the same sentence. And the district court said that at ER-12, I believe. ER-19 is what I was looking at. It's also at 12. It's also at 12, ER-19 or 12. So they're both couriers, but so?  Well, we don't know how much drugs. We don't know, but the question is, is it substantively unreasonable for the district court to find that two couriers should get the same sentence? And the government's submission is that it is not substantively unreasonable. Papao made, as I've already said and as the district court said, at least 15 trips to Hawaii. And during those trips, he must have carried drugs. And the court essentially said, Papao is a courier. Vanny Meni is a courier, and therefore I should impose the same sentence on both of them. Does the government agree that that's not an appropriate A6 consideration? Yes, Your Honor, but it is. So where does it come in? I think it comes in under, as Saturn said, it comes in under the, well, it's the role in the offense. I believe it's the history and characteristics of the defendant. So the court may look at the disparities among the various defendants who are convicted of the same thing, and despite counsel's effort to say they were convicted of different things, they both were convicted of 841A, 21 U.S.C. 841A, which makes it a crime to distribute drugs. Excuse me. So I think that it is not substantively unreasonable for the district court to say both of these defendants are couriers and both of them should get 36 months. But let's, I mean, I guess, yeah, but let's say one courier had trafficked in 20 times the amount of drugs that the other one would. You would not in that scenario say that they both should get the same sentence, right? Because the Sentencing Commission has told us that drug quantity should largely drive the ultimate sentence. The Sentencing Commission, there's no doubt about it, the Sentencing Commission has said that drug quantity should drive the ultimate, the sentence. But in this case, the court was, whether it was unwilling or unable to find a drug quantity, it nevertheless found that Pau-Pau had made 15 trips to Hawaii and should receive a higher sentence in the 10 to 16-month range that the kind of. But why? I guess I just don't understand that. This is not like the Sentencing Commission hasn't given a lot of thought to this. And it said that if you, like in a case like this, if all you can find are, you know, quantities that trigger a, I can't even remember what the numbers are, but, you know, a offense level that spits out 10 to 16 months because that's all you're able to reliably find on the record, then why isn't that, why shouldn't that be the presumptive sentence? It's not clear that that was all the district court could find. The district court found that it took the jury's statement that it could not find a quantity. It said that the witnesses were unreliable. But it has to go beyond that. It has to look at acquitted conduct. It has to look at relevant conduct. And it did not, it refused to do that. It did not, it said. Refused or just said, I've done all that and I still don't feel comfortable pegging it at X amount. He said, at ER 9, he said, that's a very bad practice for a judge to follow. So I believe the district court is saying that it's unwilling to look at quantity because it just doesn't, it won't go behind the jury's verdict. In fact, he said he could have said a quantity, right, at the bottom of 9. He says, well, we legally can. I mean, he's going on, he's kind of talking to himself and saying, I don't want to contradict the jury even though I actually could. It seems like he thought he could have set a higher level and he just didn't. I believe that's correct. The court could have set the level higher and refused to do so. And keep in mind, this judge, this is Judge Breyer who's been on the bench for 20 years. So he's sentenced a lot of defendants and he knows, you know, he knows. And on the sentencing commission. And, well, he's on the sentencing commission as well, yes. What do you make of the district judge's statement in discussing A-6 that what Millay got was almost a benchmark of what would be appropriate in this case? Doesn't that particular statement by the district judge make this case unlike the Saturn case? But it seems like the district judge was locking himself in under A-6 to the sentence that the co-defendant got. I think this court has made clear that defendants in the same case who are convicted of the same thing can be compared to the defendant at issue. That cannot be done under A-6, but it can be done under other provisions of 3553A. So I don't think the court is locking itself in. I think it's just comparing Pow-Pow to another courier, and it is entitled to do that. He wasn't just comparing, though. He said that's almost a benchmark. And he seems to be anchoring himself under A-6 to what Millay got. Well, again, I don't think A-6 really is. I think this court in Saturn has said A-6 refers to nationwide disparities. Right, and I agree with you on that. And so the question is, can the court look at other disparities or disparities among defendants convicted of the same offenses in the same case? And I think this court was willing to do so. And the fact that it used the word benchmark, I guess I do not see that as locking itself in to a particular sentence. It allowed parties to argue for another sentence, and the defendant argued for a lower sentence, and the government argued for a higher sentence. So it found that 36 months was correct. And the question, as I've said several times, is, is that a substantively unreasonable sentence? Thank you. Okay, thank you. Let's give you two minutes for rebuttal. If I may, Your Honor, very briefly, on this point of, you know, did the district court err? Go ahead. I'm sorry. In not looking at relevant conduct, you know, not looking at acquitted conduct, I mean, one, the government did not make any kind of cross appeal on that. But secondly, the court made it very clear. They don't have to cross appeal. They're not trying to change the judgment. I mean, you're the one who wants the judgment changed. So they don't have to cross appeal. Well, okay, but the record here is that the district court, you know, didn't just rely on the jury's finding. It made its own finding. It said, I sat through two trials, no narcotics seized, no lab reports, serious questions as to the reliability of the witnesses who testified. And later in the sentencing transcript of DR-20, he says, I feel like lameness, which is a court that, you know, found that there wasn't a sufficient basis for quantity, dictates my sentencing guideline decision here. So I think that has to be our starting point here, is this actual guidelines decision consistent with the jury's decision, not something that he could have done. And that's where the judge ultimately says, look, I know I'm still supposed to come up with a number, notwithstanding the fact that the jury didn't. But ultimately, the court says, but on this evidence, I can't come up with a number. And he says, I can't even come up with exactly what the drugs were, whether it was meth or cocaine, because this evidence is just, it's not reliable enough for me to peg it at a specific quantity. So I grant you that. That is definitely different from the other defendant who admitted to a specific quantity. But hold on. I'm sorry. But the judge says before that, but the guy made, your client made, rather, however many trips, 15, 20 trips. And so, I mean, he knows that there's some quantity involved. And just by virtue of the amount of cash that was involved in some of these, it has to be a pretty substantial quantity, right? Yeah, but the trips to Hawaii are not illegal. And the question is, was he carrying drugs and how much? And the statute, the sentencing guidelines make it very clear that that amount is what determines what is similar conduct for purposes of sentencing. And I think, as Your Honor pointed out, on E6, he starts with 3553A6. He says, this is what I've got to look at here. This is a benchmark. I think, at a minimum, there has to be a remand of sentencing because he's basing it. The government conceded here that that was an improper basis for sentencing in this  So I think we need to remand. The jury must have found that he was carrying drugs on those flights to Hawaii, right? Isn't that a necessary part of finding him guilty? At least on one occasion. You know, there's no finding as to how many trips or how many trips involved carrying drugs. I mean, the jury said, no, we don't have sufficient evidence here. And the government made those same arguments to the jury, right? And the jury rejected them and the court rejected them. They hadn't proven it. What the court then did was essentially to wipe out the decision of the jury and its own decision that this defendant should be sentenced under a different part of the statute than the co-defendant. And, again, this is exactly what was done in Enrique Munoz, which this court said in Von Willis. No, that's not appropriate. I know it wouldn't be a rebuttal if I addressed the double jeopardy issue.  Thank you. Thank you, Your Honor. This case, I just argue, will be submitted.
judges: Watford, Friedland, Feinerman